Arleta BRICKEY, Mabel Mason, The
Estate of Tillie Krueger,
Appellants,

v.

CONCERNED CARE OF THE MID-
WEST,INC., d/b/a Oak View Liv-
ing.Center, Respondent.

No. 74555.

Missouri Court of Appeals,
Eastern District,
Division Five.

March 30, 1999.

Donald C. Otto, Hendren and Andrae, L.L.C., Jefferson City, for appellants.

Joseph L. Leritz, Leritz, Plunkert, & Bruning, P.C., St. Louis, for respondent.

KENT E. KAROHL, Judge.

Arleta Brickey and Mabel Mason, Plaintiffs, are the surviving daughters of Tillie Krueger (Krueger) and the personal representatives of the Estate of Tillie Krueger. Plaintiffs sued Defendant, Concerned Care of the Midwest, Inc., d/b/a Oak View Living Center, Inc.,[1] claiming breach of contract based upon the negligent care of Tillie Krueger, and separate claims for wrongful death, negligence and medical malpractice. Plaintiffs appeal: (1) dismissal of the breach of contract claims; and (2) summary judgment on claims of wrongful death, medical malpractice and negligence. We affirm.

Tillie Krueger, a 95–year–old woman, was a resident of a nursing home operated by Defendant in Jefferson City, Missouri. On June 21, 1993, an employee of Defendant discovered Krueger had sustained a leg fracture. She was admitted to St. Mary's Health Center (St.Mary's) for treatment. A second fracture was discovered on December 13, 1993. She was transferred to St. Mary's that same day for treatment. Plaintiffs alleged on March 12, 1995, Krueger was dropped during a bed transfer, sustaining a head injury. She was admitted to St. Mary's emergency room that day. The next day, Dr. Kim Rettenmeier examined Krueger. He was not able to substantiate any head injury. On March 17, 1995, Tillie Krueger died.

Plaintiffs, individually and as personal representatives of Tillie Krueger's estate, filed a petition against Defendant in the Circuit Court of Cole County on December 15, 1995. The lawsuit was dismissed without prejudice. Plaintiffs refiled the petition in St. Louis County on August 18, 1997. They sought damages for injuries Krueger sustained from alleged mistreatment and improper care, and for damages Plaintiffs sustained as a result of an alleged breach of contract.

Defendant filed a motion for summary judgment on the medical malpractice, wrongful death and negligence claims based upon the absence of evidence of medical causation and the statute of limitations. Defendant filed a separate motion to dismiss the breach of contract claims arguing that the claims can only be for medical malpractice. The trial court granted both motions.

■ In their first point on appeal, Plaintiffs argue the trial court erred in granting Defendant's motion to dismiss the breach of contract claims. To withstand dismissal, Plaintiffs' allegations must be sufficient to permit proof of a well-pleaded cause of action. *Leeser Trucking, Inc. v. Pac–A–Way, Inc.,* 914 S.W.2d 40, 42 (Mo.App. E.D.1996). We must assume that all the facts pleaded in the petition are true, making reasonable inferences from those facts. *Id.* However, we need not accept the conclusions of Plaintiffs. *Michigan Sporting Goods Distributors v. Lipton Kenrick,* 927 S.W.2d 570, 573 (Mo. App. E.D.1996). We will affirm the dismissal if it can be sustained on any ground submitted by the Defendant in support of the motion, regardless of whether the trial court relied on that ground. *Braswell v. Chehval,* 935 S.W.2d 53, 54 (Mo.App. E.D.1996). Thus, the burden is on Defendant to establish that Plaintiffs' allegations fail to state a claim. *Nisbet v. Bucher,* 949 S.W.2d 111, 113 (Mo.App. E.D.1997).

■ Defendant argues that Plaintiffs failed to allege facts sufficient to state a cause of action for breach of contract, and that the statute of limitations bars the claim. To state a cause of action for breach of contract, plaintiff must plead: "(1) mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of the contract." *Muir v. Ruder,* 945 S.W.2d 33, 36 (Mo.App. E.D.1997).

Plaintiffs argue: (1) they entered into a contract with Defendant in which Plaintiffs agreed to pay Defendant to take care of their mother; (2) Defendant breached the contract "by failing to properly care for, treat or

---

1. There is no dispute that Concerned Care of the Midwest, Inc., Oak View Living Center and Oak Ridge Nursing Center are the same party.

supervise [T]illie Krueger and failed to keep plaintiffs informed of Tillie Krueger's condition;" and (3) as a direct result of the breach of contract, they suffered damages.

Plaintiffs failed to state a breach of contract cause of action. Defendant agreed to provide health care services as described in the admission contract, which provided, inter alia:

> Residents have the right to a high standard of care.
>
> Residents at Oak Ridge Nursing Center, Inc. [also referred to as Concerned Care of the Midwest, Inc.] will receive courteous and individualized health care.
>
> The management at this facility has agreed to exercise reasonable care toward the resident as his or her known condition may require, however, this facility is in no sense an insurer of his/her safety or welfare and assumes no liability as such.
>
> Physician shall or may notify family and/or responsible party of change in resident's condition or death. The resident's physician may leave this to the Administrator or Director of Nursing or Charge Nurse.

In their brief, Plaintiffs contend the basis for their breach of contract claims is that Defendants agreed to provide non-medical services. Consequently, they conclude that their claims are independent of any medical malpractice action, and are not barred by the two-year statute of limitations for medical malpractice claims. *See, Rowland v. Skaggs Companies, Inc.,* 666 S.W.2d 770, 774 (Mo. banc 1984).

The definitions provided in sections 538.205(4) and (5) RSMo 1986 [2] for medical malpractice include the services Defendant agreed to perform. Defendant is undeniably a "health care provider" as a "long-term care facility ... that provides health care services under the authority of a license or certificate." Section 538.205(4) RSMo 1986. Defendant provides health care services, defined as:

> any services that a health care provider renders to a patient in the ordinary course of the health care provider's profession or, if the health care provider is an institution,

in the ordinary course of furthering the purposes for which the institution is organized. Professional services shall include, but are not limited to, *transfer to a patient of goods or services incidental or pursuant to the practice of the health care provider's profession* or *in furtherance of the purposes for which an institutional health care provider is organized.* Emphasis added.

Section 538.205(5) RSMo 1986. Plaintiffs' claims fall within this definition; therefore, their claims are for malpractice and not for breach of contract.

We have held plaintiffs cannot recover for malpractice claims under a breach of contract theory. *Ley v. St. Louis County,* 809 S.W.2d 734, 737 (Mo.App.1991); *Spruill v. Barnes Hospital,* 750 S.W.2d 732, 733 (Mo.App.1988). Plaintiffs' claims sound in tort, and not in contract. *Spruill,* 750 S.W.2d at 733. However, we have recognized claims for breach of warranty by a physician when he binds himself to a contract to cure. *Gage v. Morse,* 933 S.W.2d 410, 420 (Mo.App. S.D.1996).

Furthermore, Plaintiffs were not damaged, as alleged. The alleged improper conduct may have injured Krueger, but not Plaintiffs personally. They prayed to be compensated for "their costs herein expended and incurred, for fair and reasonable damages for the aggravating circumstances of deceased's death...." More specifically, they seek a refund for the sums paid for Krueger's care on the theory of breach of the admission contract. Defendant did not guarantee that Krueger would not become sick, injured or die.

Additionally, Plaintiffs alleged Defendant failed to notify them of Tillie Krueger's condition, which would arise to a cause of action. The allegation of failure to notify fails on undisputed facts because Defendant's incident reports, pertaining to both leg fractures, suggest a family member was notified of the specific incident.

Plaintiffs' claims do not arise to a cause of action for breach of contract. The trial court did not err in granting Defendant's motion to

---

**2.** The statutory definitions have remained un-      changed during all dates relevant to this opinion.

dismiss the attempted contract claims. Point denied.

In their second point, Plaintiffs argue that the trial court erred in granting Defendant's motions for summary judgment on Plaintiffs' claims for wrongful death based on negligence and medical malpractice. Plaintiffs argue that the facts and the "sudden onset" doctrine provide a sufficient basis to withstand summary judgment.

Our review of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered, according that party the benefit of all reasonable inferences that may be drawn from the record. *Id.* We will uphold summary judgment where there is no genuine issue as to material facts and the movant is entitled to judgment as a matter of law. *Id.*

When the moving party offers summary judgment facts which would support judgment as a matter of law, the non-moving party must demonstrate that one or more of the material facts is in fact in dispute. *Dunagan by and through Dunagan v. Shalom Geriatric Center*, 967 S.W.2d 285, 287 (Mo. App. W.D.1998). The non-moving party must provide summary judgment facts by use of affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue of fact, which would allow them to go to trial. *Id.*

■ The elements for a negligence claim are: (1) defendant has a duty to protect the plaintiff from injury; (2) breach of that duty; and (3) an injury suffered by plaintiff which was proximately caused by defendant's breach of duty. *Jones v. Ames*, 901 S.W.2d 160, 162 (Mo.App. E.D.1995). Plaintiff must offer evidence to support finding both cause in fact and proximate cause. *Id.* at 163. To satisfy the cause in fact prong, Plaintiffs must rely on facts to support a finding that Tillie Krueger's death would not have occurred but for the alleged negligence of Defendant. *Callahan v. Cardinal Glennon Hospital*, 863 S.W.2d 852, 860–861 (Mo. banc 1993). For the proximate cause prong, they must also preserve facts

that would support finding the causal connection between the Defendant's conduct and the alleged resulting death. *Jones*, 901 S.W.2d at 163.

■ The elements for a medical malpractice claim are: "(1) proof that defendant's act or omission failed to meet the requisite standard of care; (2) proof that the act or omission was performed negligently; and (3) proof of a causal connection between the act or omission and the injury sustained by the plaintiff." *Klaus v. Deen*, 883 S.W.2d 904, 907 (Mo.App. E.D.1994). Therefore, to establish the malpractice claim, plaintiffs must allege and offer facts which would support finding a causal connection between Defendant's actions and Tillie Krueger's death. *Id.*

■ With respect to the issue of causation, Plaintiffs argued that they were entitled to rely on the "sudden onset" rule. The "sudden onset" doctrine provides that lay testimony may be sufficient to permit a finding of a causal relationship between an accident and a medical condition. *Eubanks v. Poindexter Mechanical Plumbing and Heating*, 901 S.W.2d 246, 248 (Mo.App. S.D.1995). Such testimony may be sufficient only when the facts fall within the understanding of lay persons. *Williams v. Jacobs*, 972 S.W.2d 334, 340 (Mo.App. W.D.1998). When there is a sophisticated injury, requiring surgical intervention or other highly scientific technique for diagnosis, proof of causation is not within a lay person's understanding. *Id.*

In *Knipp v. Nordyne, Inc.*, 969 S.W.2d 236 (Mo.App. W.D.1998), the Western District of this court reviewed a decision of the Labor and Industrial Relations Commission denying a plaintiff death benefits for her husband's death. The widow of the worker argued, in essence, that "when a person falls, hits his head, and dies of brain hemorrhaging, it is obvious that the fall caused or contributed to the hemorrhaging, and expert testimony to that effect is unnecessary." *Knipp v. Nordyne, Inc.*, 969 S.W.2d 236, 240 (Mo.App. W.D.1998). The court disagreed; it held that causation, on those facts, was not within the understanding of lay persons. The uncontradicted medical evidence intro-

duced at the hearing supported finding that an aneurysm caused the worker's death. *Id.* There was no evidence to support a finding that his fall and head injury caused or contributed to his death. *Id.* In fact, the doctor's opinions contained in the medical records suggested that the fall did not contribute to his injury. *Id.* Thus, where proof of causation requires a certain degree of expertise, an expert's opinion is necessary and a lay opinion is not sufficient.

■ The "sudden onset" doctrine does not apply to permit a layman to find causation here. Plaintiffs rely on cases in which the lay person's testimony relied on was that of the person harmed. *Eubanks,* 901 S.W.2d 246. *See also Fogelsong v. Banquet Foods Corp.,* 526 S.W.2d 886 (Mo.App.1975); *Smith v. Terminal Transfer Co.,* 372 S.W.2d 659 (Mo.App.1963). That testimony could both establish a basis of finding causation and exclude finding other causes of injury. In *Eubanks,* the Southern District of this court held that the plaintiff's testimony constituted sufficient evidentiary support to establish causation between his injury and an accident from work; therefore, there was sufficient evidence to affirm the award. *Eubanks,* 901 S.W.2d at 249. The plaintiff had a history of back problems but the court determined that his complaining injury was "distinctly different from anything that appeared previously." *Id.*

Plaintiffs argue that on March 12, 1995, Tillie Krueger sustained a head injury when Defendant's employees dropped Krueger during a bed transfer. They argue that Tillie Krueger died on March 17, 1995 because of the alleged head injury. The unopposed medical evidence submitted to the court supports a contrary finding. Krueger's death certificate indicates respiratory failure as her immediate cause of death. In Plaintiffs' first suit, brought in Cole County, their expert witness testified that she had no opinion as to whether Krueger's fall on March 12, 1995 caused or contributed to cause Krueger's death. She did not have an opinion to oppose the finding that the cause of death was from respiratory failure, as indicated on the death certificate. In addition, Dr. Rettenmeier, the physician who treated and evaluat-

ed Krueger at St. Mary's on March 13, 1995, testified in his deposition in the Cole County lawsuit that he was not able to substantiate any injury to her head. He further testified that Krueger died from sepsis, an infection that involves the blood stream, resulting from a urinary tract infection.

The medical evidence on the cause of Tillie Krueger's death is not within a lay person's understanding. Thus, the "sudden onset" doctrine has no application here. The trial court did not err in granting Defendant's motion for summary judgment. Point denied.

■ In their third point, Plaintiffs argue that the trial court erred in granting Defendant's motion for summary judgment on their claims of negligence and medical malpractice concerning two different leg fractures. The court ruled these claims are time barred by the applicable two-year statute of limitations. Actions against health care providers are governed by section 516.105 RSMo 1986. Section 516.105 provides, in part:

All actions against … any other entity providing health care services … for damages for malpractice, negligence, error or mistake related to health care shall be brought within two years from the date of the occurrence of the act of neglect complained of….

Defendant falls within this statute, as a health care provider. Plaintiffs rely on (1) the continuing care exception, and (2) Defendant's failure to notify them of Krueger's injuries, either of which may toll the statute of limitations.

■ The continuing care exception provides that the statute begins to run when the defendant ceases to treat the injury caused by the alleged act of negligence or neglect. *Dunagan,* 967 S.W.2d at 289. The exception applies only "where the treatment is continuing and of such a nature as to charge the medical [provider] with the duty of continuing care and treatment which is essential to recovery." *Id.* In *Dunagan,* the Western District of this court declined to apply this exception in an action against a nursing home. *Id.* It held that the exception applies only in cases where there was one

physician providing continuing treatment, not against a health care facility. *Id.* This court has also declined to extend the exception against a hospital, which was alleged to have provided continuing care over a period of time. *Shah v. Lehman,* 953 S.W.2d 955, 958 (Mo.App. E.D.1997).

Plaintiffs base their continuing care exception argument on two separate incidents when Tillie Krueger fractured her leg. The first incident was discovered on June 21, 1993. She was immediately admitted to St. Mary's. When the second fracture was discovered on December 13, 1993, she was admitted to St. Mary's again. Plaintiffs first filed their petition alleging medical malpractice in Cole County on December 15, 1995, not within the two-year period as prescribed by the statute of limitations. Nevertheless, Plaintiffs argue that the statute did not begin to run until March 17, 1995 when Tillie Krueger died. They contend that Defendant continued treatment for Krueger's fractures until her death. However, Plaintiffs alleged that Krueger sustained both fractures because of Defendant's negligence. On both occasions, Krueger was transferred to St. Mary's. The continuing care exception extends the statute until the date Defendant ceased treating the injury caused by the act of neglect. *Dunagan,* 967 S.W.2d at 289. There are no summary judgment facts to support finding Defendant continued to care for Krueger's fractures until she died on March 17, 1995. Thus, the doctrine does not apply.

■ Plaintiffs also argue the medical malpractice statute of limitations was tolled because Defendants failed to notify Plaintiffs of Krueger's injuries as required by the admission contract. It provides "[p]hysician shall or may notify family and/or responsible party of change in resident's condition or death. The resident's physician may leave this to the Administrator or D.O.N. or charge nurse." The contract does not create a duty for Defendant to notify the family of any changes in Krueger's condition. Furthermore, there are unopposed summary judgment facts, Krueger's medical records, which show the family was informed of her condition.

■ Plaintiffs also argue that Defendants actively concealed the information regarding her condition and this conduct tolled the statute of limitations. *Mahurin v. St. Luke's Hospital of Kansas City,* 809 S.W.2d 418, 421 (Mo.App.1991). The only evidence Plaintiffs produced to support their concealment allegation is a late filed affidavit by Arleta Brickey (Brickey), Krueger's daughter. Brickey affirms in her affidavit that on December 17, 1993, she heard Defendant's staff discuss keeping the incident "quiet" because it was Krueger's second fracture. She further asserts that Defendant "covered up" the incidents.

■ Defendant responded by noting that Plaintiffs failed to file a response to its motion for summary judgment within the thirty-day period prescribed by Rule 74.04(c)(2). In which case, there were no timely presented summary judgment facts to support the concealment theory. Plaintiffs tendered an answer in response to Defendant's motion and attached Arleta Brickey's affidavit, but did so out of time under the rule and without leave of court. Failure to respond to a summary judgment is not by itself reason to grant the motion. *Peltzman v. Beachner,* 900 S.W.2d 677, 678 (Mo.App. W.D.1995). The judgment must also be correct as a matter of law. *Id.* However, such failure requires us to accept as true that there are no factual issues in dispute. *Id.* The malpractice and negligence claims are barred by the statute of limitations where there are unopposed facts to support a finding that Defendant did not actively conceal Krueger's injuries. Point denied.

We affirm.

ROBERT G. DOWD, Jr., C.J. and RICHARD B. TEITELMAN, J. concur.